ENTERED NOV 1 9 2014

STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-13-34
DHM-KEN-5/19/2014

ANDREW CHAPMAN,

      Petitioner

v.

                                   DECISION

SECRETARY OF STATE,

      Respondent

This is a petition for judicial review pursuant 5 M.R.S.A. § 11001, *et seq.*, and M.R. Civ. P. 80C, of a decision of a hearing officer of the Bureau of Motor Vehicles denying the rescission of a three-year administrative suspension of Petitioner's license pursuant to 29-A M.R.S.A. § 2458(2-A). Petitioner was charged with recklessly or negligently operating a motor vehicle in a manner so as to cause the death of another person.

There appears to be little dispute of the facts. On June 16, 2012, at approximately 2:20 p.m., on a clear dry day, a seventy-five year old man was driving his Buick sedan southbound on Route 1 in Waldoboro, a two-lane paved highway with break down lanes on either side sufficient in width for a vehicle to pass a left turning vehicle. The posted speed limit is 55 m.p.h. The gentleman's eighty-two year old wife was seated in the front passenger seat of the Buick wearing her seatbelt. The gentleman had stopped his vehicle in the southbound lane with the intent of turning left into a driveway, and was waiting for oncoming northbound traffic to pass so he could complete his turn.

Petitioner was driving a pickup truck in the southbound lane with approximately four to five car lengths between him and the stopped vehicle. Petitioner's vehicle, without reducing speed, struck the rear end of the left turning

vehicle causing it spin into the northbound lane and crash into a ditch. It appeared the Petitioner was going to pass around the stopped vehicle via the breakdown lane.

The Petitioner is quoted by a witness as saying he had turned around to look at his baby and then failed to notice that the stopped vehicle was in his lane until it was too late to avoid a collision. While he later asserted that he looked in his rear view mirror at the baby, that statement was inconsistent with what he told the witnesses. Petitioner did not claim that he observed either turn signals or working brake lights before the crash.

The trunk of the stopped Buick had been pushed forward until it was adjacent to the back of the front seat as a result of the collision. The driver told first responders that his legs were injured. The driver's wife, who was seat belted in the front passenger seat, was slumped over. An attending paramedic reported that she was obviously dead as a result of the traffic accident. The driver did not provide any information that his wife had been having any kind of medical emergency before the crash.

In an interview at the Waldoboro Police Department, the Petitioner told the officer that he had turned around to look at his son momentarily, and that when he turned back facing forward, he saw for the first time the vehicle stopped in front of him. He said he had no time to react before striking the vehicle. He did not tell the officer that he had been looking in the rear view mirror.

The Secretary of State suspended the operator license of the petitioner informing him that the administrative suspension for three years was "due to a fatal motor vehicle accident which occurred on June 12, 2012 in Waldoboro, Maine."

At the hearing, the Petitioner and his wife, who was a passenger along with the son, testified that the Petitioner looked at his son for a couple of seconds in the rear view mirror. The hearing examiner did not find the Petitioner's testimony to be

2

credible and concluded that he "was inattentive to the vehicle in front of him and that his inattentiveness violated his legal duty to exercise reasonable care on the road." The hearing examiner also found that Petitioner's "negligent operation of his vehicle caused physical injury and harm resulting in the death of Florence Bryant."

In his brief, the Petitioner disputes the findings of fact by the examiner by asserting that common use of the rear view or examining other facilities on the dashboard commonly would not be considered negligent and attributes the accident to the lack of evidence that the vehicle struck by the Petitioner had brake and directional signals. In that regard, the Petitioner argues that the hearing officer's ruling on negligence "impermissibly shifted the burden onto Petitioner to establish that he was not negligent where the State bears the entire burden of proof by a preponderance of evidence to establish that the action was caused by Petitioner's negligence." Petitioner further argues that the State did not establish by a preponderance of the evidence that the accident actually caused the death of the passenger. In that regard, Petitioner argues that the lack of medical evidence as to the cause of death by the passenger fails the State in proving that the manner in which the Petitioner was operating the vehicle was such as to cause the death.

Negligence cannot be presumed from the mere fact that an accident or injury occurred. Instead, there must be specific evidence of negligence. Negligence is the failure to use reasonable care and reasonable care is that degree of care which a reasonably careful person would use under like circumstances. Negligence may consist of doing something that a reasonably careful person would not do under like circumstances or negligence may consist of failing to do something that a reasonably careful person would do under like circumstances.

3

To meet the test of the preponderance evidence, the State, in this instance, has the burden to convince the hearing examiner that what it is trying to prove is more likely true than not. The scales must tip slightly in favor of the State. However, if the State convinces the hearing examiner at best on the issue of negligence of a fifty-fifty tie, then it has not met its burden of a preponderance of the evidence.

In a motor vehicle negligence case, it is the duty of a motorist to follow the rules of the road. Under those rules, every motorist must use ordinary care at all times for his/her own safety and for the safety of other motorists. In addition, the operator of a motor vehicle must operate their vehicle at such speed as to be able to avoid any visible obstruction, to stop upon reasonable notice within a reasonable distance, and to perform or maneuver consistent with due care. Next, a driver has a duty to see that which is open and apparent to any prudent person. Also, the driver has a duty to exercise care to avoid colliding with objects on the highway. A person driving a motor vehicle has a duty to be alert to danger.

It is for the hearing examiner, the finder of fact, to determine the facts based upon the evidence before her. The examiner found the accident occurred on the afternoon of a clear and dry June day on a straight stretch of road. The speed limit in the area was 55 m.p.h. and the road was busy with traffic. There are a number of commercial businesses in the area on both sides of the highway with vehicles routinely turning left or right into those businesses. The Buick sedan, operated in the southbound lane by Mr. Bryant, was stopped and positioned close to the center line. It appeared to witnesses that the vehicle was waiting for traffic to clear so it could make a left turn into a driveway. The witnesses were coming in the opposite direction and could see the Petitioner's pickup truck approaching in the southbound lane. It became apparent to the witnesses that the Petitioner was not slowing down at all, and the witness assumed

4

that the Petitioner would travel around to the right of the stopped vehicle as there was a paved breakdown lane on the right side of that road south with a width sufficient to accommodate a motor vehicle. Instead, Petitioner's vehicle rear ended the Bryant vehicle "with enough force that it propelled the Bryant vehicle into the traffic in northbound lane where eventually it careened into the ditch."

Eighteen hours after the time of the accident, Petitioner was interviewed by a police officer. "During that interview, Mr. Chapman basically reiterated what he had already admitted to immediately following the accident." That "he took his eyes off the roadway to check his infant son in the rear of the truck, and when he turned back the [Bryant] car was directly in front of him. Mr. Chapman said there was no time to stop. Mrs. Chapman [passenger in Petitioner's truck] told Officer Fuller that she was looking for Keenan [their infant son in the rear of the truck]." The passenger "could not confirm or deny that the car was stopped in traffic." At a later time, the Petitioner told a representative of an insurance company that the stopped vehicle did not show brake lights or a turn signal. "He explained in that interview (exhibit 6) that he looked back at his son for half a second, and the Bryant vehicle 'was stopped dead in the road.'" The Petitioner never mentioned the nonworking brake lights to the police officer, even after a hiatus of eighteen hours.

The hearing examiner went on to note that the Petitioner maintained that he had been following the Bryant vehicle approximately five vehicle lengths behind and that both vehicles were travelling at 50-55 m.p.h. She further noted that the Petitioner stated that he had been following the Bryant vehicle for some time. The hearing examiner concluded from the Petitioner's testimony that the Petitioner was not focusing on the traffic in front of him but was occupied with the child and the cargo area where he was carrying fencing material, checking gauges to assure there was enough fuel, and

5

observed a nursery business that was passed just before the accident. The examiner also concluded that the Bryant vehicle had to take some period of time to arrive at a complete stop and that the movement of the vehicle from 50-55 m.p.h. to a complete stop would take longer than the period of time the Petitioner testified his eyes were off the road checking his son.

On these findings of those facts, a conclusion of negligence by a preponderance of the evidence was established. As noted by the Petitioner in his brief, the statute, 29-A M.R.S. § 2458(2)(A), that has to be applied by the hearing examiner, requires a finding that operator first has recklessly or negligently operated a motor vehicle and also, that it was done in a manner so as to cause the death of another person. Petitioner stresses the phrase "in a manner" and argues that the recklessness or negligence must have been of a manner or magnitude to put a person of reasonable and ordinary prudence on notice that his or her conduct could lead to the death of another person.

It is fundamental in civil law that if one negligently causes damage to another person, the negligent person must take the victim as he or her finds him or her. In that regard, the hearing examiner noted that the deceased person in the Bryant vehicle had a date of birth of 1930, meaning she was an eighty-two year old person at the time of her death. She also found that the Bryant vehicle was at a complete stop, concluding from the witnesses that the Petitioner's vehicle did not slow down, and realizing that he agreed to be travelling 50-55 m.p.h. prior to the accident. In the absence of medical evidence that the passenger was in medical distress prior to the collision, it appears more likely than not that an impact, under those circumstances, particularly as it drove the vehicle into the ditch, would be done in a manner to cause the death of a passenger of the stopped vehicle. For all these reasons, the court is satisfied that the hearing examiner did not place the burden of proof on the Petitioner, but clearly used the

6

Petitioner's own sworn testimony and the statements to the police and the insurance investigator to conclude that he did negligently operate his motor vehicle in a manner to cause the death of a passenger.

The entry will be:

The relief prayed for in the Petition is DENIED.


DATED: MAY 19, 2014

Donald H. Marden
Superior Court Justice

7

| Date Filed | 8/15/13 | Kennebec County | Docket No. AP-13-34 |
|---|---|---|---|

Action: <u>Petition for Review</u>
80C

~~J. Murphy~~        **J. Marden**        F

Andrew Chapman        vs.        Matthew Dunlap, Secretary of State

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Christopher MacLean, Esq.<br>20 Mechanic Street<br>Camden, ME  04843 | Donald Macomber, AAG<br>6 State House Station<br>Augusta, ME 04333 |

Date of Entry

| | |
|---|---|
| 7/22/13 | Petition for Review, filed 8/15/13. s/MacLean, Esq. |
| 8/23/13 | Entry of Appearance for Matthew Dunlap, filed (8/22/13). s/Macomber, AAG |
| 9/16/13 | Certified Record, filed (9/12/13). s/Macomber |
| 9/16/13 | Notice and Briefing Schedule issued. Copy to s/MacLean, Esq. s/Macomber, AAG |
| 9/16/13 | Justice assigned: Michaela Murphy |
| 10/23/13 | Brief of Petitioner, filed 10/21/13. s/MacLean, Esq. |
| 11/12/13 | Brief of Respondent Secretary of State, filed 11/8/13. s/Macomber, AAG |
| 11/24/13 | Per emails dated 11/13/13, Petitioner will not file reply brief and parties waive oral argument. |
| 11/24/13 | Under advisement. |
| 5/20/14 | DECISION, Marden, J. (5/19/14)<br>The relief prayed for in the Petition is DENIED.<br>Copy to Atty MacLean and AAG Macomber.<br>Copy to repositories. |
| 5/20/14 | Notice of removal of Record mailed to AAG Macomber. |